IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARLES EDWARD BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV195 |
| | ) | |
| FIRST ADVANTAGE BACKGROUND | ) | |
| SERVICES CORP., ASHCOTT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

This case concerns claims by Plaintiff Charles Edward Brown over a background report prepared by First Advantage Background Services Corporation ("First Advantage"), which erroneously attributed criminal records to Brown. Before the court are multiple motions to seal brought by both Brown and First Advantage. (Docs. 62, 66, 72, 74, 78, 84.) For the reasons stated below, the court will deny two of First Advantage's motions (Docs. 72, 84) and grant in part and deny in part the remaining motions.

I. BACKGROUND

Brown filed this action against First Advantage on March 1, 2023. (Doc. 1.) He amended his complaint and added Ashcott, LLC ("Ashcott") as a defendant on May 9, 2024. (Doc. 42.) On September 3, 2024, First Advantage moved to exclude Brown's expert, Thomas Jaeb, and attached ten exhibits to its brief. (Doc. 64.) The same day, it moved to seal two of the exhibits in part. (Doc. 62.) First Advantage simultaneously moved for summary judgment,

attaching thirteen exhibits to its corresponding brief (Doc. 68), and moved to seal four of those exhibits in part. (Doc. 66.) The following day, it moved to seal a portion of an additional exhibit to the brief in support of its motion to exclude Jaeb's testimony. (Doc. 72.) Brown responded in opposition to First Advantage's motion to exclude Jaeb's testimony and its motion for summary judgment. (Docs. 73, 77.) Both responses included a number of exhibits; Brown moved to seal two exhibits to each response in their entirety. (Docs. 74, 78.) First Advantage responded in support of these motions to seal, but requested only portions of these exhibits be sealed. (Docs. 81, 82.) Finally, First Advantage replied to Brown's response in opposition to its motion for summary judgment (Doc. 85) and moved to seal portions of one exhibit to its corresponding brief (Doc. 84).

## II. ANALYSIS

The Fourth Circuit has recognized a public right of access to judicial records rooted in both the common law and the First Amendment. See Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988). The First Amendment right of access applies to documents filed in connection with a summary judgment motion. Id. "[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The operations of the courts and the judicial conduct of judges are matters of

2

utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), "and the public's business is best done in public," Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d. 725, 727 (M.D.N.C. 2013). "When parties call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." Doe v. Pub. Citizen, 749 F.3d 246, 271 (4th Cir. 2014) (quoting Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000)) (internal quotation marks omitted).

When a party makes a request to seal judicial records, a district court "must comply with certain substantive and procedural requirements." Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004). Procedurally, the court must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision over the alternatives. Id. "As to the substance, the district court first 'must determine the source of the right of access with respect to each document,' because '[o]nly then can it accurately weigh the competing interests at stake.'" Id. (quoting Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 181 (4th Cir. 1988)). The denial of access must be "narrowly tailored." U.S. ex rel. Oberg v. Nelnet, Inc., 105 F.4th 161, 171 (4th Cir. 2024). "Generally,

3

the public interest in disclosure heightens as the underlying motions are directed more to the merits and as the case proceeds toward trial." SmartSky Networks, LLC v. Wireless Sys. Sols., LLC, 630 F. Supp. 3d 718, 732 (M.D.N.C. 2022). Under this court's Local Rules, "[n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support." M.D.N.C. L.R. 5.4.

Sealing confidential business information may be appropriate absent an improper purpose or countervailing interest. See Nixon, 435 U.S. at 598; Abjabeng v. GlaxoSmithKline, LLC, No. 1:12-CV-568, 2014 WL 459851, at *3 (M.D.N.C. Feb. 5, 2014). In order to determine whether confidential business information should be sealed, courts consider (1) "whether the party has shown that the information sought to be sealed is confidential"; (2) "whether disclosure would harm the party's competitive standing or otherwise harm its business interest"; (3) "whether the motion is narrowly tailored"; and (4) "whether the interests in non-disclosure are compelling and heavily outweigh the public's interest in access to the information." Sims v. BB&T Corp., No. 1:15-CV-732, 2018 WL 3466945, at *2 (M.D.N.C. July 18, 2018).

However, it is not enough to assert generally that exhibits contain "sensitive and confidential business information" without

4

supplying "specific underlying reasons for the district court to understand how [the party's interest] reasonably could be affected by the release of such information."  Trs. of Purdue Univ. v. Wolfspeed, Inc., No. 1:21-CV-840, 2023 WL 2776193, at *2 (M.D.N.C. Feb. 28, 2023) (quoting Wash. Post, 386 F.3d at 579); see also Glaston Corp. v. Salem Fabrication Techs. Grp, Inc., 744 F. Supp. 3d 430, 445 (M.D.N.C. Aug. 9, 2024) (holding that sealing is warranted when public access to confidential business information could harm the litigant's competitive standing).

Both parties have moved to seal certain documents.  First Advantage seeks to seal the following: portions of the deposition transcript of Matthew O'Connor from August 30, 2023 ("O'Connor Deposition") (Exhibit E in Docs. 65-6, 69-7, 75-2, 79-2, 86-5); audit information and data of recorded errors involving Ashcott ("Audit Data") (Doc. 65-10 at Ex. D1; Doc. 69-10 at Exs. D1, D4); and the contract between Ashcott and First Advantage outlining the scope of Ashcott's services ("Agreement") (Doc. 69-6 at Ex. 2; Doc. 65-7 at Ex. 2).  (See Docs. 62, 66, 72, 84.)  Brown further moved to seal excerpts of the O'Connor Deposition (Docs. 75-2, 79-2)[1] and the Public Records Report on Brown (Docs. 75-3, 79-7).  (See Docs. 74, 78.)  First Advantage responded in support of

---

[1] Brown seeks to seal the entirety of Exhibit 2 to his response in opposition to First Advantage's motion to exclude expert testimony and of Exhibit 2 to his response in opposition to First Advantage's motion for summary judgment.  These exhibits contain sixteen and thirty-seven pages, respectively, of the O'Connor Deposition.

5

Brown's motions to seal but requests that only portions of the O'Connor Deposition excerpt be sealed. (Docs. 81, 82.)

### A. O'Connor Deposition

As to the information contained in the excerpts of the O'Connor Deposition, the parties assert that the portions they seek to seal contain confidential information regarding First Advantage's proprietary business interests and strategies. Specifically, they cite information detailing First Advantage's process for conducting a background check, the nature of its work with Ashcott, how and where data is stored, and the manner in which data is transmitted. (Docs. 62, 66, 74, 84.) Though the parties agree that portions of the deposition excerpts ought to be sealed, such an agreement alone is an insufficient reason to seal it. M.G.M. by and through Mabe v. Keurig Green Mountain, Inc., No. 1:22-CV-36, 2022 WL 6170557, at *2 (M.D.N.C. Oct. 7, 2022).

Because excerpts of the O'Connor Deposition were filed in support of a motion for summary judgment,[2] the First Amendment right of access applies. See Rushford, 846 F.2d at 253. The motions have been filed with the court since September 3, 2024, and there has been no objection. The interest in sealing some of

---

[2] Though First Advantage initially filed an excerpt of the O'Connor Deposition in support of its motion to exclude expert testimony (Doc. 65-6), it again filed excerpts of the deposition in its brief supporting its motion for summary judgment (Doc. 69-6) and in its reply (Doc. 86-5). Similarly, Brown filed an excerpt of the O'Connor Deposition in his brief opposing summary judgment (Doc. 79-2) requesting the entirety of the exhibit be sealed. (Doc. 78.)

6

the material in the O'Connor Deposition excerpts is significant because of the impact its disclosure may have on First Advantage's competitive standing. First Advantage has demonstrated that the "testimony reveals confidential, proprietary policies and systems essential to operating FADV's business." (Doc. 62.) In particular, revealing information about how First Advantage manages and processes data, which are integral business functions, would be harmful. In addition, details about First Advantage's process for creating a background report are sensitive because their disclosure could harm First Advantage's efforts to compete. However, the parties have failed to narrowly tailor their suggested redactions. Brown has moved to seal the entirety of two exhibits containing excerpts of the O'Connor Deposition (Docs. 74, 78), and First Advantage has suggested redactions that exceed the scope of the proprietary protections, for example, seeking to seal general information about its business (see, e.g., Doc. 65-6 at 13; Doc. 69-7 at 6; Doc. 75-2 at 4, 15). These suggested redactions are too broad and must be more narrowly tailored so that only information pertaining to proprietary business information and trade secrets is subject to seal. Thus, the court will deny the motions to seal with respect to the excerpts of the O'Connor Deposition. Consequently, the court will unseal the O'Connor Deposition in ten days unless the parties file redacted versions of its excerpts for public viewing consistent with this order.

B.  The Agreement

    First Advantage moves to seal its agreement retaining Ashcott for public record search services. First Advantage contends the Agreement contains "confidential, proprietary business methods . . . [and] terms between [First Advantage] and its vendors." (Doc. 72 at 1-2.) In a declaration, Natalie Cascario, an attorney for First Advantage, explains the entire Agreement is sensitive because it reveals "confidential, proprietary business methods, information, and policies" that render it impossible to make redactions. (Id. ¶ 5.)

    Because the Agreement was filed in support of a motion for summary judgment (Doc. 69) the First Amendment right of access applies. See Rushford, 846 F.2d at 253. Under the First Amendment right of access, parties must "narrowly tailor[]" the denial of access. See Nelnet, 105 F.4th at 171. This court's local rules prohibit "overly broad motions to seal." M.D.N.C. L.R. 5.4. Here, First Advantage has not narrowly tailored its suggested redactions and instead asserts that the entire document warrants sealing due to the difficulty in parsing out sensitive information. Because of the First Amendment right of access to the Agreement, the bar for sealing an entire document is high and an attempt to narrowly tailor the redactions is required.

    Here, First Advantage has failed to narrowly tailor its sealing request so that only sensitive information that would cause

it harm if made accessible to the public is redacted.  Furthermore, First Advantage has failed to adequately demonstrate why the content contained within the Agreement requires the entire document to be sealed.  Thus, if First Advantage wants to seal the Agreement, it must first narrowly tailor its redactions to any sensitive information at issue and explain why those redactions are necessary.  For example, the pricing terms within the contract are likely sensitive, while other terms governing the relationship between the parties are not clearly sensitive.  The court will therefore unseal the Agreement in ten days unless First Advantage files a redacted version consistent with this order.

### C. Public Records Report

Brown moves to seal the entirety of the Public Records Report, asserting the document contains "confidential information such as Plaintiff's personal identifying information."  (Doc. 78 at 2.) First Advantage agrees with sealing the entire Public Records Report because it is a document "exclusively maintained in [First Advantage's] internal, confidential systems" and "reveals sensitive, confidential, and proprietary processes and data used by [First Advantage] when preparing certain reporting information."  (Doc. 82 at 2.)

A First Amendment right of access attaches to the Public Records Report because it was filed by Brown in opposition to First Advantage's motion for summary judgment.  See Rushford, 846 F.2d

9

at 253. The information has been filed with the court since October 3, 2024, and no objection has been lodged. The Public Records Report contains personal identifiable information relating to Brown and is a document detailing First Advantage's process in conducting background reports. The public does not have a right to access the personal identifiable information of the Plaintiff and no general public interest is served in disclosing such information.

As to the internal operating information of First Advantage, First Advantage has adequately demonstrated that the document should be sealed. There is an interest in sealing confidential and sensitive information that pertains to the proprietary function of businesses. The Public Records Report would allow the public to access the proprietary methods and procedures used by First Advantage when conducting a background investigation. This information could damage First Advantage's competitive standing if released publicly. Due to the nature of the document, to narrowly tailor the sensitive information would require redacting the entire document. Therefore, sealing of the entire Public Records Report is warranted.

    D.   **Audit Data**

First Advantage moves to seal the Audit Data, which contain data from audits of searches performed by Ashcott, because it

10

reveals "sensitive, confidential data used only in First Advantage's internal operations." (Doc. 66 at 2.)

A First Amendment right of access applies to the Audit Data because it was filed by First Advantage in support of its motion for summary judgment. See Rushford, 846 F.2d at 253. The information has been filed with the court since September 3, 2024, and no objection has been filed. The Audit Data contains sensitive proprietary information that First Advantage uses internally to operate its background reporting service. It records the number of errors in Ashcott searches performed for First Advantage, the dispute rate for First Advantage reports, and numerous details about the nature of Ashcott's errors. This information is especially sensitive, as public access to the Audit Data could negatively impact First Advantage's competitive standing in the market. The interest in ensuring that First Advantage's proprietary information is protected outweighs the public's interest in accessing the information. First Advantage requests a complete seal of the Audit Data because narrowly tailored redactions would only result in the entire document being redacted. The court agrees. Therefore, sealing of the Audit Data is warranted.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that:

11

First Advantage's motion to seal (Doc. 62) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED with respect to Exhibit D1 to I (Doc. 65-10) and DENIED with respect to Exhibit E (Doc. 65-6).

First Advantage's motion to seal (Doc. 66) is GRANTED IN PART and DENIED IN PART.  The motion is DENIED with respect to Exhibit 2 to E (Doc. 69-6) and Exhibit F (Doc. 69-7).  The motion is GRANTED with respect to Exhibit D1 to I (Doc. 69-10) and Exhibit D4 to I (Doc. 69-10).

First Advantage's motion to seal (Doc. 72) is DENIED.

Brown's motion to seal (Doc. 74) is GRANTED IN PART and DENIED IN PART.  The motion is DENIED with respect to Exhibit 2 (Doc. 75-2) and is GRANTED with respect to Exhibit 3(Doc. 75-3).

Brown's motion to seal (Doc. 78) is GRANTED IN PART and DENIED IN PART.  The motion is DENIED with respect to Exhibit 2 (Doc. 79-2) and GRANTED with respect to Exhibit 7 (Doc. 79-7).

First Advantage's motion to seal (Doc. 84) is DENIED.

IT IS FURTHER ORDERED that for all materials as to which a motion to seal is DENIED (Docs. 65-6, 69-6, 69-7, 75-2, 79-2, and 84), the court will direct the Clerk of Court to unseal each of them in ten (10) days unless the moving party files a proposed redacted version consistent with the terms of this Order before then.

12

                                             /s/    Thomas D. Schroeder
                                             United States District Judge

July 11, 2025