IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHARLES EDWARD BROWN,<br><br>        Plaintiff,<br><br>v.<br><br>FIRST ADVANTAGE BACKGROUND SERVICES CORP. and ASHCOTT, LLC,<br><br>        Defendants. | 1:23CV195 |

## MEMORANDUM ORDER

This case is before the court on Charles Edward Brown's motion for default judgment against Defendant Ashcott, LLC (Doc. 52) and motion to lift stay as to consideration of that motion (Doc. 100). For the reasons that follow, the stay will be lifted and the motion for default judgment will be granted as to liability but denied without prejudice as to damages.

## I.  BACKGROUND

The facts alleged in the amended complaint are as follows: Brown is a resident of North Carolina. (Doc. 42 ¶ 16.) Around December 2022, he applied for a job as a long-haul truck driver with FedEx through a third-party vendor, FXG Vendor J D SR Trucking Inc. ("FXG"). (Id. ¶ 46.) Brown successfully completed an interview and a drug test, as required for the job application process. (Id. ¶ 49.) FedEx extended an offer to him with a start

date in January 2023, but his employment was contingent upon the successful completion of a background check.  (Id. ¶ 50.)  FXG contracted with Defendant First Advantage Background Services Corporation ("First Advantage") to conduct background checks for its prospective employees, and on December 26, 2022, it ordered a criminal background check on Brown.  (Id. ¶ 52.)  First Advantage retained Ashcott to perform criminal records searches for its background reports.  (Id. ¶ 71.)  "Ashcott is a South Carolina business . . . [with] a principal place of business" in South Carolina.  (Id. ¶ 20.)  It "regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports."  (Id. ¶ 21.)

On December 29, 2022, First Advantage purchased background reports on Brown's criminal history prepared by Ashcott.  (Id. ¶¶ 71, 73.)  Ashcott then searched court records in Philadelphia County, Pennsylvania, and on December 30, 2022, it published a report to First Advantage that reported several criminal convictions for Brown.  (Id. ¶ 75.)  Ashcott claimed to have matched several felony criminal convictions to Brown based on his first, middle, and last names and his full Social Security number.  (Id. ¶ 77.)  This criminal record was then included in the

2

background report First Advantage provided to FXG.  (Id. ¶ 78.)

On January 9, 2023, FXG informed Brown that his application for employment had been denied due to the convictions in his criminal record reported by First Advantage.  (Id. ¶ 78.)  Brown then obtained a copy of the background report and saw that the criminal convictions included in the report did not, in fact, belong to him.  (Id. ¶ 79.)  The convictions were those of another Charles Brown, who had a different middle name and Social Security number from Plaintiff Charles Brown.  (Id. ¶ 80.)  On January 10, 2022, Brown informed FXG of this mistake and was told to contact First Advantage to correct the report and that he could re-apply for the job thereafter.  (Id. ¶¶ 80-81.)  Brown was embarrassed and distressed by the false report accusing him of having a criminal record.  He did not re-apply for the job.

Brown has advised the court that he has settled his claim against First Advantage.  (Doc. 99.)  Thus, there is no risk of inconsistent judgments, and the court will lift its oral stay (see Doc. 93) on consideration on Brown's motion for default judgment. (Doc. 100.)

**II. ANALYSIS**

When a "motion for default judgment is unopposed, the court must exercise sound judicial discretion to determine whether default judgement should be entered." United States v. Williams, No. 1:17-cv-00278, 2017 WL 3700901, at *1 (M.D.N.C. Aug. 25, 2017)

3

(internal quotation marks omitted). "Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint." J&J Sports Prods., Inc. v. Romenski, 845 F. Supp. 2d 703, 705 (W.D.N.C. 2012). "However, the defendant is not deemed to have admitted conclusions of law." Id. The party moving for default judgment must still show that the defaulted party was properly served, Md. State Firemen's Ass'n v. Chaves, 166 F.R.D. 353, 354 (D. Md. 1996), and that the "unchallenged factual allegations constitute a legitimate cause of action," Agora Fin., LLC v. Samler, 725 F. Supp. 2d 491, 494 (D. Md. 2010); see Romenski, 845 F. Supp. 2d at 705 (default judgment is proper when "the well-pleaded allegations in the complaint support the relief sought"). Finally, "[i]f the court determines that liability is established, the court must then determine the appropriate amount of damages. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations." Samler, 725 F. Supp. 2d at 494 (citation omitted). Furthermore, the court may hold a hearing to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). Alternatively, "the Court may award relief without a hearing if it is supported by the pleadings." J&J Sports Prods., Inc. v. After Six Prods., Inc.,

4

No. 3:13-CV-591, 2014 WL 644400, at *2 (E.D. Va. Feb. 19, 2014) (citing Anderson v. Found. for the Advancement, Educ. and Emp. of Am. Indians, 155 F.3d 500, 507 (4th Cir. 1998)).

Federal Rule of Civil Procedure 4(h)(1)(A) allows service on a corporation consistent with Rule 4(e)(1), which permits service that "follow[s] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The relevant North Carolina statute allows service on a corporation by, among other ways, "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served." N.C. Gen. Stat. § 1A-1, Rule 4(j)(6)(c). In this case, Ashcott was served with the amended complaint and summons on May 16, 2024 by service on its registered agent, Jennifer Davidson. (Doc. 45.) Thus, the record reflects that Brown properly served Ashcott.

Brown brought one claim against Ashcott for failure to follow reasonable procedures to assure maximum possible accuracy pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b). To prevail on a claim for violation of § 1681e(b), a plaintiff must prove that his consumer report contains inaccurate information and that the credit reporting agency did not follow reasonable procedures to assure maximum possible accuracy of that consumer report. Dalton v. Cap. Associated Indus., Inc., 257 F.3d 409, 415 (4th

5

Case 1:23-cv-00195-TDS-JEP   Document 103   Filed 07/21/25   Page 5 of 9

Cir. 2001). "A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." Id. (internal quotation marks omitted) (alterations adopted). Here, the facts in the amended complaint demonstrate that the background report prepared by Ashcott for First Advantage was inaccurate: it attributed criminal records to Brown that did not belong to him. Brown's allegations also show that Ashcott did not follow reasonable procedures to assure maximum possible accuracy of the report. Ashcott claimed that the criminal record was matched to Brown by his full name and his full Social Security number when that could not be true. If Ashcott had reviewed the middle name and Social Security number of the Charles Brown who was associated with the criminal records it identified and compared those identifiers to Plaintiff Brown, it would have discovered that they did not match. To report that the criminal record had been matched to Plaintiff Brown on his full name and Social Security number was not reasonable. Brown claims that this error not only cost him the job opportunity with FedEx but also caused him emotional distress, which is compensable under FCRA. See, e.g., Sloane v. Equifax Info. Servs., LLC, 510 F.3d 495, 503-04 (4th Cir. 2007). Thus, the court will grant Brown's motion for default judgment against Ashcott as to liability.

As to damages, the amended complaint alleges that Brown's job

6

with FedEx would have paid "nearly $2,000 per week" and was full time. (Doc. 42 ¶ 101.) In his brief in support of his motion for default judgment, Brown requests $100,000 in compensatory damages and $100,00 in punitive damages. (Doc. 53 at 13-14.) Brown clarifies that the job with FedEx would have paid $1,600 to $1,800 a week, which is $83,200 to $93,600 per year. (Id. at 13.) He seeks lost income for one year and argues that $100,000 is appropriate to compensate for that year of lost income and the emotional distress caused by the inaccurate report. (Id.)

There is evidence in the record, however, that Brown was employed from the time he applied for the job with FedEx until April 2023, when he voluntary quit his job. (Doc. 68-2 at 6:4-7:18.) That evidence also demonstrates that even while Brown was unemployed from April 2023 to October 2023, he earned income, though it is unclear how. (Id. at 8:20-9:4.) Brown's requested relief does not account for this other income. It is Brown's burden to prove actual damages and, absent some justification for doing so, the court declines to award him damages for claimed lost income where he appears to have been otherwise employed during that same period. Therefore, the court will hold a hearing on damages unless Brown files support for his damages request that accounts for income he earned in the year following the denial of his job application by FXG.

The court will deny Brown's request for punitive damages.

7

Punitive damages are available for willful violations of FCRA. 15 U.S.C. § 1681n(a); Safeco Ins. Co. v. Burr, 551 U.S. 47, 53 (2007). Willful violations of FCRA include both knowing and reckless violations. Safeco, 551 U.S. at 59. The pleadings do not support Brown's contention that Ashcott's violation of FCRA was willful. Ashcott's report noted a match on Brown's full name and Social Security number to a criminal record that, in fact, belonged to another Charles Brown with a different middle name and Social Security number. However, the amended complaint does not allege any facts regarding how Ashcott conducted its search of the court records in Philadelphia County, Pennsylvania. The facts alleged demonstrate, as the court has found, Ashcott's failure to comply with FCRA, but they do not demonstrate that this error was necessarily a knowing or reckless violation of the statute. Rather, the inaccurate report could have equally been the result of negligence in either the preparation of the report or in connection with the search. Therefore, the motion for default judgment will be denied insofar as it seeks an award of punitive damages.

## III. CONCLUSION

For these reasons,

IT IS ORDERED that Brown's motion to lift stay (Doc. 100) is GRANTED and Brown's motion for default judgment (Doc. 52) is GRANTED as to liability but DENIED WITHOUT PREJUDICE as to damages.

8

IT IS FURTHER ORDERED that this case is set for a hearing on damages on August 21, 2025, at 10:00 a.m., Courtroom # 2, unless Brown files support for his damages request within 14 days consistent with this order.

Any request for reasonable attorneys' fees and costs will be considered following resolution of the damages issue.

/s/   Thomas D. Schroeder
United States District Judge

July 18, 2025

9

Case 1:23-cv-00195-TDS-JEP   Document 103   Filed 07/21/25   Page 9 of 9