IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES EDWARD BROWN,           )
                                )
          Plaintiff,            )
                                )
     v.                         )          1:23cv195
                                )
FIRST ADVANTAGE BACKGROUND      )
SERVICES CORP. and ASHCOTT,     )
LLC,                            )
                                )
          Defendants.          )

<u>**MEMORANDUM OPINION AND ORDER**</u>

THOMAS D. SCHROEDER, District Judge.

This matter is before the court following the court's request that Plaintiff Charles Edward Brown file supplemental briefing on his request for damages against Defendant Ashcott, LLC ("Ashcott"). Previously, the court granted Brown's motion for default judgment against Ashcott as to liability under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 <u>et</u> <u>seq.</u>, but it denied the motion without prejudice as to damages. (<u>See</u> Doc. 103.) Brown has filed the supplemental briefing to support his request for at least $100,000 in damages. (Doc. 108.) For the reasons that follow, Brown's motion for default judgment as to damages will be granted in part and denied in part.

I.   **BACKGROUND**

In December 2022, Brown applied for a full-time position as a long-haul truck driver with FedEx via a third-party vendor, FXG

Vendor J D SR Trucking, Inc. ("FXG"). (Doc. 42 ¶ 46.) Through FXG, FedEx offered the job to Brown with a start date in January 2023. (Id. ¶ 50.) FedEx conditioned the job offer on Brown's successful completion of a background check. (Id.)

FXG contracted with Defendant First Advantage Background Services Corporation ("First Advantage") to conduct background checks for prospective employees. (Id. ¶ 52.) Moreover, First Advantage retained Ashcott to perform the criminal records searches for its background check reports. (Id. ¶ 71.) Accordingly, in December 2022, FXG ordered First Advantage to conduct a criminal background check on Brown, and First Advantage then purchased background reports on Brown's criminal history from Ashcott (Id. ¶¶ 71, 73). Ashcott searched the court records in Philadelphia County, Pennsylvania, and it provided First Advantage with a report that attributed several criminal convictions to Brown. (Id. ¶¶ 74-75.) Ashcott claimed that it matched the criminal felony convictions to Brown based on first, middle, and last names, in addition to his full Social Security Number. (Id. ¶ 77.) First Advantage included the criminal record in the report provided to FXG. (See id. ¶ 78.)

On January 9, 2023, FXG informed Brown that his job application had been denied because of the three convictions on his background check report. (Id.) When Brown obtained a copy of the report, he identified the mistake and contacted FXG on January

10, 2023.  (Id. ¶¶ 79-80.)  He informed FXG that he had never lived in Pennsylvania, had never used the suffix Jr., had a different Social Security Number, and was not a convicted felon.  (Id. ¶ 80.)  FXG told Brown to contact First Advantage to correct the report.  (Id. ¶ 81.)  Moreover, FXG told Brown that he could reapply for the job once the report had been corrected.  (Id.)  Brown felt panicked and frustrated because of the false report, and he never reapplied for the job.  (Id. ¶¶ 82-83, 94.)

In July 2025, the court granted Brown's motion for default judgment against Ashcott as to liability, but the court denied the motion without prejudice as to damages.  (Doc. 103 at 8.)  The court noted that Brown sought compensatory damages for one year of lost income in addition to emotional distress said to be caused by the inaccurate report.  (Id. at 7.)  Because "[i]t is Brown's burden to prove actual damages" and he "appear[ed] to have been otherwise employed" during the period he claimed lost income, the court indicated that it would hold a hearing on damages unless Brown filed "support for his damages request that accounts for income he earned in the year following the denial of his job application by FXG."[1]  (Id.)  Brown has filed the requested documentation.  (See Doc. 108.)

_____

[1] The court's prior order denied Brown's motion for default judgment as to damages in part because it appeared that Brown earned income from an unspecified source between April and October 2023.  (Doc. 103 at 7.)

3

## II.  ANALYSIS

### A.    Standard of Review

On a motion for a default judgment, "[i]f the court determines that liability is established, the court must then determine whether these unchallenged factual allegations constitute a legitimate cause of action.  The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations."  <u>Agora Fin., LLC v. Samler</u>, 725 F. Supp. 2d 491, 494 (D. Md. 2010) (citation omitted).  Moreover, the court may hold a hearing to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).  Alternatively, "the Court may award relief without a hearing if it is supported by the pleadings."  <u>J & J Sports Prods., Inc. v. After Six Prods., Inc.</u>, No. 13-CV-591, 2014 WL 644400, at *2 (E.D. Va. Feb. 19, 2014) (citing <u>Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians</u>, 155 F.3d 500, 507 (4th Cir. 1998)).

"The FCRA provides a private cause of action for those damaged by violations of the statute.  A successful plaintiff can recover . . . actual damages for negligent violations.  Actual

---

Brown has supplemented the record, and it is evident that his testimony was in fact the opposite.  (Doc. 108 at 5.)  He did not earn income from employment during that period.  (Doc. 108-1 ¶ 9.)

4

damages may include not only economic damages, but also damages for humiliation and mental distress." Sloane v. Equifax Info. Servs., LLC, 510 F.3d 495, 500 (4th Cir. 2007) (citations omitted).

B. **Brown's Lost Employment Opportunity Damages**

Brown first contends that, at minimum, he is entitled to the difference between what he actually earned in 2023 and what he would have earned in 2023 had he been hired by FedEx. (Doc. 108 at 6.) According to Brown, this difference – or "shortfall" – is at least $76,179.15. (Id.) However, Brown overstates his harm.

A plaintiff seeking actual damages under the FCRA has a duty to mitigate his damages. See, e.g., Cooper v. Milliman, Inc., No. 23-cv-00028, 2025 WL 2249600, at *7 (M.D. Fla. Aug. 7, 2025); Smith v. Experian Info. Sols., Inc., No. 24-CV-408, 2025 WL 973492, at *2 (N.D. Ind. Apr. 1, 2025); Marcinski v. RBS Citizens Bank, N.A., 36 F. Supp. 3d 286, 291 (S.D.N.Y. 2014). Here, FXG invited Brown to reapply for the job once First Advantage corrected his background check report. (Doc. 42 ¶ 48.) Brown disputed the report with First Advantage on January 10, 2023, and First Advantage issued a corrected report on February 8, 2023 (Docs. 42 ¶ 80; 68 at 13; 68-2 at 22-23). Yet, Brown never reapplied for the job. (Doc. 42 ¶ 94.) Brown cannot now claim lost income for an entire year when he made no effort to mitigate his damages, especially after FXG expressly invited him to reapply. Thus, at most, the shortfall in Brown's income stems only from the six-week

5

period between his denial by FXG and the issuance of the corrected background check report, at which point he could have simply reapplied for the job.

The applicable measure of Brown's economic damages is the difference between what Brown earned on average for six weeks of work with his original employer, R&L Carriers, and what he would have earned if he had worked those same six weeks with FedEx. While at R&L Carriers, Brown earned $5,216.55 over the course of about four months.  (Docs. 108 at 3-4; 108-2 at 2.)  This equates to about $326.03 per week, or $1,956.21 for six weeks.  At FedEx, Brown anticipated that he would have earned between $83,200 and $93,600 annually.  (Doc. 108 at 3.)  Giving Brown the benefit of assuming that he would have earned at the high end of the salary range, this equates to $1,800 per week, or $10,800 for six weeks. As a result, a reasonable calculation of Brown's income shortfall for the relevant six-week period is $8,843.79.

C.    **Brown's Emotional Distress Damages**

Brown next argues that he suffered emotional distress because of Ashcott's erroneous reporting and that it independently justifies a damages award of $100,000. (Id. at 7.) Specifically, Brown contends that he experienced "prolonged and severe emotional distress, including depression, anxiety, sleeplessness, heavy drinking, loss of motivation to seek work, and a deterioration of his physical health as evidenced by a spike in his A1C levels."

6

(Id. at 8.)  According to Brown, "[t]hese injuries persisted for the better part of a year and required professional mental health treatment and medication."  (Id.)

The Fourth Circuit has "warned that not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 241 (4th Cir. 2009) (quoting Sloane, 510 F.3d at 503).  Thus, a plaintiff is required to "sufficiently articulate true demonstrable emotional distress." Sloane, 510 F.3d at 503.  "A plaintiff's testimony 'must indicate with specificity how the plaintiff's alleged distress manifested itself' and 'must also show a causal connection between the [FCRA] violation and her emotional distress.'" Primrose v. Castle Branch, Inc., No. 14-CV-235, 2017 WL 57800, at *8 (E.D.N.C. Jan. 3, 2017) (alteration in original) (quoting Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 547 (4th Cir. 2003)).  "'Demonstrable' emotional distress refers to emotional distress which leads to externally observable occurrences like physical symptoms or a diagnosis from a medical professional." Id. (first citing Bryant, 333 F.3d at 547; and then citing Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 653 (4th Cir. 2002)).

Here, Brown alleges that his A1C levels, which measure his blood glucose, have risen from 6.7 percent to 7.5 percent because of his emotional distress.  (Docs. 108 at 7; 108-3 at 8.)  He

7

asserts that he has experienced some loss of sleep, and he has increased his drinking from two glasses of wine per day to two bottles of wine per day, five days per week. (Docs. 108 at 7; 108-3 at 9-10.) Moreover, he contends that his primary doctor began prescribing an antidepressant to him in October 2023. (Docs. 108 at 7; 108-3 at 5-6.) Finally, Brown asserts that he began seeing a psychologist at some point in 2023. (Docs. 108 at 7; 108-3 at 10.)

The court is unpersuaded that these externally observable occurrences warrant $100,000 in actual damages for emotional distress. Brown may have experienced some initial reaction and frustration at the erroneous information on his background check report. However, he contacted First Advantage only one day later, and First Advantage produced a corrected report within six weeks. Brown knew all along that the initial report was false. Further, although he reviewed the erroneous report in January 2023, he did not seek treatment for depression from a healthcare professional until October 2023. Accordingly, he did not receive any medication until about ten months after the alleged cause of his emotional distress. Given this significant lapse of time, the relatively quick resolution of the initial discrepancy, and the fact that Brown could have reapplied for the position shortly after the error

8

occurred (and long before he began to see anyone for his symptoms),[2] it is difficult for the court to causally connect his claimed depression or increased alcohol consumption to the false information on his background check report. Moreover, Brown did not provide any testimony or documentation from his treating physician, psychologist, or counselor.

Nevertheless, Brown has plausibly claimed some demonstrable emotional distress that occurred after he became aware of the initial background check report. The court will therefore award Brown $2,500 in actual damages for the emotional distress incurred because of Ashcott's erroneous reporting.

In sum, the court awards Brown $8,843.79 for his lost employment opportunity and $2,500 for his emotional distress, resulting in a total award of $11,343.79 in actual damages. As to attorney's fees, "in the case of any successful action to enforce liability" for negligent noncompliance, the FCRA authorizes a party to recover "the costs of the action together with reasonable attorney's fees as determined by the court."[3] 15 U.S.C.

---

[2] Brown has maintained all along that his prospective employer agreed with him that his lapsed medical certificate was curable and not an impediment to his being hired. (Doc. 77 at 19-20.)

[3] The court already found that Brown failed to allege any facts that would demonstrate a willful violation of the FCRA by Ashcott. (See Doc. 103 at 8.) However, a party may recover costs and attorney's fees in successful actions for either willful or negligent noncompliance with the FCRA. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

§ 1681o(a)(2).  Any request for attorney's fees shall be made through a separate motion that complies with Local Rule 54.2.

## III.  CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Plaintiff Brown's motion for default judgment (Doc. 52) as to damages is GRANTED IN PART and Brown shall recover of Defendant Ashcott actual damages in the amount of $11,343.79; the motion is otherwise DENIED.

/s/   Thomas D. Schroeder<br>
United States District Judge

October 14, 2025